

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| ESTER BULLOCK, | § |
|     Plaintiff, | § |
| | § |
| vs. | §   CIVIL ACTION NO. 3:19-2863-MGL-PJG |
| | § |
| FRANK KENDALL, *Secretary, Department of* | § |
| *the Air Force*, | § |
|     Defendant. | § |

**ORDER ADOPTING THE REPORT AND RECOMMENDATION
AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**I.    INTRODUCTION**

Plaintiff Ester Bullock (Bullock) filed this lawsuit against her former employer, Matthew Donovan (Donovan), then the Secretary of the Air Force, alleging Title VII retaliation. Defendant Frank Kendall, the current Secretary of the Department of the Air Force (Defendant), has since succeeded, and is substituted, for Donovan. *See* Fed. R. Civ. P. 25(d) ("An action does not abate when a public officer who is a party in an official capacity . . . ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party.") The Court has federal question jurisdiction over this action in accordance with 28 U.S.C. § 1331.    The matter is before the Court for consideration of the Magistrate Judge's Report and Recommendation (Report) suggesting Defendant's motion for summary judgment be granted. The Report was made in accordance with 28 U.S.C. § 636 and Local Civil Rule 73.02 for the District of South Carolina.

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight. The responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261, 270 (1976). The Court is charged with making a de novo determination of those portions of the Report to which specific objection is made, and the Court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

## II.     FACTUAL AND PROCEDURAL HISTORY

The Magistrate Judge filed the Report on February 23, 2021, Bullock filed her objections on March 9, 2021, and Defendant filed his reply on March 30, 2021. The Court has reviewed Bullock's objections, but holds them to be without merit. It will therefore enter judgment accordingly.

Bullock worked for many years as a civilian employee at the Shaw Air Force Base. Here is a brief recitation of the relevant dates and incidents that are important in the Court's consideration of her Title VII retaliation claim:

**June 12, 2013**     Bullock's supervisor, Heyward Singleton (Singleton), gives her a Civilian Progress Review Worksheet detailing a host of problems in her job performance. For instance, he notes she was "constantly wait[ing] for step-by-step directions for an area [she] should be the expert in," was "not grasping basic concepts," did not "accept/follow instructions effectively," was "lacking" in written and oral communication, and was "not self sufficient at all in [her] position." He also states that "[s]tep by step direction is too often needed but then not followed. Follow-up is not a strong suit."

**September 16, 2013**     Singleton provides Bullock with another Civilian Progress Review Worksheet that is critical of her job performance. In it, Singleton states Bullock demonstrated "no initiative to be an asset," that her "planning/scheduling [was] deficient," and that her "[w]ork productivity/quality shows poor listening/discussion skills." Singleton also states that "[s]tep by step direction is still required for most duties.

2

|                       |                                                                                                                                                                                                                                                                              |
|-----------------------|------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
|                       | Follow-up is only made when directed and then minimally." According to Singleton, "[t]oo much time [was] lost complaining to/with others at work station and other areas."                                                                                                   |
| **November 20, 2013** | Singleton issues to Bullock a Letter of Caution related to her poor job performance.                                                                                                                                                                                         |
| **December 19, 2013** | Bullock files her first Equal Employment Opportunity (EEO) complaint.                                                                                                                                                                                                        |
| **January 21, 2014**  | Bullock and Singleton participate in a mediation conference that ultimately resolves Bullock's December 19, 2013, EEO complaint.                                                                                                                                             |
| **March 11, 2014**    | Singleton issues to Bullock a Notice of Proposed Reprimand, which relies on events that occurred between November 21, 2013, and January 9, 2014. As such, these event occurred before the mediation conference mentioned above; and some occurred before Bullock filed her first EEO complaint. |
| **April 1, 2014**     | Bullock and Singleton sign a settlement agreement stemming from the January 21, 2014, mediation, Bullock withdraws her December 19, 2013, EEO complaint, and Singleton withdraws the March 11, 2014, Notice of Proposed Reprimand.                                           |
| **May 13, 2014**      | Bullock receives an "Unacceptable Performance" evaluation; and Singleton places her on a Performance Improvement Plan (PIP).                                                                                                                                                 |
| **July 9, 2014**      | Bullock files her second EEO complaint.                                                                                                                                                                                                                                      |
| **October 2, 2014**   | Singleton sends a Notice of Proposed Removal to Bullock for failure to meet her PIP.                                                                                                                                                                                         |
| **March 26, 2015**    | Bullock retires.                                                                                                                                                                                                                                                             |

### III.   DISCUSSION AND ANALYSIS

####   *A.   The Applicable Law*

In considering Bullock's retaliation claim, because hers is a circumstantial case, the Court must employ the familiar burden-shifting scheme set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under the *McDonnell Douglas* framework, an employee must first establish a prima facie case of her Title VII claims. *Id*. at 802.

3

To establish a prima facie case of Title VII retaliation, the employee must show: "(1) that [she] engaged in protected activity, (2) that the employer took a materially adverse action against [her,] and (3) there is a causal connection between the protected activity and the adverse action." *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 213 (4th Cir. 2019).  The parties contest whether Bullock has satisfied the second and third elements required to establish a prima facie case of retaliation.

Only if the employee successfully demonstrates a prima facie case does the burden shift to the employer to articulate some legitimate, non-retaliatory reason for the adverse employment action. *McDonnell Douglas Corp.*, 411 U.S. at 802.  If the employer does so, the burden shifts back to the employee to show that the articulated reason was actually a pretext for discrimination.  *Id*. at 804.

"[T]he antiretaliation provision, unlike the substantive provision, is not limited to discriminatory actions that affect the terms and conditions of employment." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 64 (2006).  Instead, the "standard for establishing an adverse employment action under Title VII's antiretaliation provision is more expansive than the standard for demonstrating a tangible employment action under the statute's antidiscrimination provisions." *Ray v. International Paper Company*, 909 F.3d 661, 670 (4th Cir. 2018).

The Supreme Court has defined an adverse employment action, as it relates to a retaliation claim, as something that "might have dissuaded a reasonable worker from engaging in protected conduct."  *Burlington*, 548 U.S. at 68 (internal citation omitted) (internal quotation marks omitted). That said, given the plaintiff must show that the alleged adverse employment action was material, *Perkins*, 936 F.3d at 213, "it is important to separate significant from trivial harms [inasmuch as] Title VII . . . does not set forth a general civility code for the American workplace." *Id*.

### B.     Bullock's Objections

Bullock offers thirteen objections to the Report. In her first objection, she contends the Magistrate Judge "ignored keyed components of the standard for the materiality of an adverse employment action as set forth in [*White*]." Objections at 3. "As such," according to Bullock, the Magistrate Judge's "recommendation that there are no actionable adverse employment actions should be disregarded, and [Defendants's] [m]otion [be] denied." *Id*. at 5.

Bullock, in support of her retaliation claim, relies on three alleged adverse acts: (1) the March 11, 2014, Notice of Proposed Reprimand, which was later withdrawn; (2) the May 13, 2014, negative performance review Singleton gave her; and, (3) his placing her on a PIP following her negative review.

In the Court's consideration of the objections regarding these three alleged adverse acts below, it has decided it will overrule each objection. Therefore, it necessarily follows that it will also overrule this objection, which groups the three alleged adverse acts together.

Because Bullock's second and third objections are closely akin, the Court will consider them together. In her second objection, she disagrees with the Magistrate Judge's suggestion "that Defendant's proposal to reprimand Plaintiff cannot constitute an adverse act." Objections at 5. And, in Bullock's third objection, she claims the Magistrate Judge erred in failing to conclude "[t]he reprimand was an adverse employment action." *Id.* at 6.

According to the Magistrate Judge, "the [proposed] reprimand Bullock relies on cannot constitute an adverse act as a matter of law because it is merely a proposal to act, rather than an actual adverse act." Report at 8. Bullock, however, maintains she "has demonstrated . . . tangible harm . . . because she has shown that this proposal, while ultimately withdrawn, was later used as the basis for placement onto a PIP and later as a basis to recommend [her] removal from

5

employment." *Id*. at 6. She then cites to two documents in the record that she says support this argument.

The first is a May 13, 2014, memorandum from Singleton concerning her "Unacceptable Performance." And, the second is a "Performance Improvement Plan Calendar." This document generally lists tasks Bullock is to perform, dates from May 14, 2014, until August 14, 2014, when they are to be done, along with comments on whether she completed them.

Yet, instead of explaining how the withdrawn proposal to reprimand "was later used as the basis for placement onto a PIP and later as a basis to recommend [her] removal from employment[,]" *id*., Bullock leaves it totally up to the Court to divine how the proposed reprimand supports that contention. The Court has carefully reviewed both documents Bullock cites, but is unable to fashion a convincing argument for Bullock.

But, even if it were able to do so, it would be left to then judge the strength of its own argument. Of course, it is not within the ambit of the Court's role to do such a thing. Thus, the Court considers this argument waived. *Russell v. Absolute Collection Services, Inc*., 763 F.3d 385, 396 n.\* (4th Cir. 2014) (stating that a "perfunctory and undeveloped claim [is] waived.").

"A threatened letter never actually written cannot constitute an adverse employment action." *Gupta v. Fla. Bd. of Regents*, 212 F.3d 571, 588 n. 15 (11th Cir. 2000) *overruled on other grounds White*, 548 U.S. 53. "[A] suspension without pay that is never served [also] does not constitute an adverse employment action." *Whittaker v. N. Ill. University*, 424 F.3d 640, 647 (7th Cir.2005). Nor does a supervisor's "drafting of a proposed decision on a possible 30–day suspension" inasmuch as it was never served. *Baloch v. Kempthorne*, 550 F.3d 1191, 1199, 384 (D.C. Cir. 2008).

This is not to say, however, that there is no situation in which some sort of proposed action will never amount to an adverse employment action. And, the Court does not read the Report to say

6

otherwise. After all, "the significance of any given act of retaliation will often depend upon the particular circumstances. Context matters." *White*, 548 U.S. at 69.

Here, however, Bullock has failed to marshal a convincing argument that there is some reason her situation is different than the run-of-the-mill case in which a proposed action fails to arise to an adverse employment action. Accordingly, the Court will overrule these two objections as well.

In Bullock's fourth objection, she states that the Magistrate Judge "erred in concluding that a negative performance evaluation cannot constitute an adverse action." Objections at 7.

Even if the Court agrees that Bullock's May 13, 2014, "Unacceptable Performance" evaluation amounts to an adverse employment action, however, this claim will still fail inasmuch as she is unable to satisfy the causation requirement for a prima facie Title VII retaliation claim.

To establish the necessary causation for a retaliation claim, "the employer must have taken the adverse employment action because the plaintiff engaged in a protected activity." *Dowe v. Total Action Against Poverty*, 145 F.3d 653, 657 (4th Cir. 1998) (emphasis in original). "[C]lose temporal proximity between activity protected by the statute and an adverse employment action may suffice to demonstrate causation." *Waag v. Sotera Defense Solutions, Inc.*, 857 F.3d 179, 192 (4th Cir. 2017).

As the Court has already noted, Bullock filed her first EEO complaint on December 19, 2013. Her May 13, 2014, poor performance evaluation came almost five months later. "The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be "very close[.]" *Clark County School Dist. v. Breeden*, 532 U.S. 268, 273–74 (2001).

7

A lapse of two months between the protected activity and the adverse action is sufficiently long so as to weaken significantly the inference of causation. *King v. Rumsfeld*, 328 F.3d 145, 151 n.5 (4th Cir. 2003). Thus, Bullock's May 13, 2014, poor performance evaluation, almost five months after her December 19, 2013 EEO complaint, fails to suggests temporal causality.

In addition, the record shows Bullock's May 13, 2014, "Unacceptable Performance" was issued because of the poor quality of her work, not in retaliation for her protected activities. For instance, as the Court noted above, Singleton issued two Civilian Progress Review Worksheets, on June 12, 2013, and September 16, 2013, in which he recites many problems with Bullock's poor job performance. Then, on November 20, 2013, Singleton gave Bullock a Letter of Caution related to her poor job performance.

"Workers are shielded from retaliation on account of their assertion of rights protected under Title VII. But a complaining worker is not thereby insulated from the consequences of . . . poor performance." *Ziskie v. Mineta*, 547 F.3d 220, 229 (4th Cir. 2008).

Thus, suffice it to say Bullock is unable to establish a prima facie retaliation claim as it relates to her poor performance review because she has failed to satisfy the causation requirement. Consequently, the Court will also overrule this objection.

Fifth, Bullock objects to the Magistrate Judge's "recommending summary judgement on an issue of law not addressed by this jurisdiction." Objections at 7. Here, she takes exception to the Magistrate Judge's recommendation that Bullock's claim that her placement on the PIP is not an adverse employment action, which is based on non-precedential law. *See* Report at 8 (Although "the Fourth Circuit has not addressed the question, several circuits have held that placement on PIP alone is not sufficiently adverse to support a retaliation claim.").

The Court need not consider this argument. For the same reasons Bullock is unable to show there is a causal connection between her filing her first EEO and her May 13, 2014, poor job performance evacuation, she is unable to establish a causal connection between her filing of her first EEO and the PIP. And, without establishing this causal connection, she is also unable to establish a prima facie case of retaliation as to this issue. Thus, the Court will overrule this objection, too.

In Bullock's sixth objection, she maintains that the Magistrate Judge erred in failing to "consider persuasive authority from the First, Second, and Ninth Circuits supporting a [holding] that a negative performance review is a sufficiently adverse action to sustain a claim of retaliation." Objections at 8.

The Court has already concluded Bullock is unable to make out a prima facie retaliation claim as it relates to her negative performance review because she can not show there is a causal connection between her filing her EEO complaint and her poor performance review. Thus, the Court need not decide whether "a negative performance review is a sufficiently adverse action to sustain a claim of retaliation." *Id.* Accordingly, the Court will overrule this objection as well.

Seventh, Bullock objects to the Magistrate Judge's treatment of *Emami v. Bolden*, 241 F. Supp. 3d 673, 685 (E.D. VA. 2017). Objections at 8. According to Bullock, "*Emami* is directly parallel to the facts of this case, and supports the denial of Defendant's [m]otion." *Id*.

There are at least two problems with this argument. First, *Emami*, as a district court opinion, is only persuasive authority. Therefore, the Court is not bound by its reasoning or holdings. And second, the Magistrate Judge provided a comprehensive analysis of *Emami* in which she distinguishes the facts of that case to this one. *See* Report at 10-11. The Court agrees with the Magistrate Judge's discussion there and need not repeat it here. Consequently, the Court will also

9

overrule this objection. In Bullock's eighth objection, she argues the Magistrate Judge "is mistaken as to the correct temporal proximity between [her] protected activity and . . . Defendant's issuance of a PIP." Objections at 9. According to Bullock, "[t]emporal [p]roximity weighs in [her] favor[.]" *Id*.

In Bullock's objections, she contends the following:

> [she] engaged in an EEO mediation conference, a protected activity, on April 1, 2014. Only two days later, on April 3, 2014, Defendant gave [her] a false and pretextual "unacceptable" employment review. On May 13, 2014, less than [forty-five] days after the EEO mediation agreement, [Bullock] was then placed on a PIP by Defendant. This close proximity is much stronger in support of pretext and causal connection than the [five]-month proximity that the [Magistrate Judge] suggests.

*Id*. at 9-10.

Although Bullock inexplicably failed to raise this issue with the Magistrate Judge, she is allowed to bring it for the first time here. *See United States v. George*, 971 F.2d 1113, 1118 (4th Cir. 1992) ("[A]s part of its obligation to determine de novo any issue to which proper objection is made, a district court is required to consider all arguments directed to that issue, regardless of whether they were raised before the magistrate.") (footnote omitted).

Nevertheless, even assuming Bullock has established that "[t]emporal [p]roximity weighs in [her] favor[,]" *id*. at 9, any inference of temporal causation is rebutted by the fact that, as the Court notes above, prior to any of the protected activity, Singleton, on at least three occasions, had already informed Bullock that her performance was unacceptable: (1) the June 12, 2013, Civilian Progress Review Worksheet, (2) the September 16, 2013, Civilian Progress Review Worksheet, and (3) the November 20, 2013, Letter of Caution. *See McLee v. Chrysler Corp.*, 109 F.3d 130, 136 (2d

Cir.1997) (Because the defendant "was preparing to discharge [the plaintiff] before [the plaintiff] contacted any of the civil rights offices, it is not a permissible inference that [the plaintiff] was discharged because he contacted those offices."). Thus, the Court will overrule this objection, too.

Ninth, Bullock objects to the Magistrate Judge's conclusion "that Defendant's decision to not reprimand [her] for prior poor performance until after she filed a complaint with EEO weighed in favor of Defendant." Objections at 10.

As the Court noted above, the March 11, 2014, Notice of Proposed Reprimand was just that: a proposed reprimand. Yes, some proposed employment actions might amount to an adverse employment action inasmuch as "the significance of any given act of retaliation will often depend upon the particular circumstances. Context matters." *White*, 548 U.S. at 69.

Here, in this context, however, Singleton's decision not issue the Notice of Proposed Reprimand for Bullock's prior poor performance until after she filed a complaint with EEO weighs in favor of neither Defendant nor Bullock. Accordingly, the Court will overrule this objection as well.

Tenth, Bullock objects to the Magistrate Judge's "assert[ion] that [she] cannot use her termination as a fact relevant to the materiality of the adverse actions committed against her." Objections at 12. This appears to be in reference to the Magistrate Judge's statement in the Report that "Bullock here cannot rely on both the PIP and her separation from employment as adverse actions, as she failed to exhaust any claims based on her termination." Report at 11.

But, even assuming this evidence concerning Bullock's termination was used for the purpose Bullock proposes, no jury of Bullock's peers could reasonably determine that, but for her protected

activity, Bullock would not have been terminated from employment.  Consequently, the Court will also overrule this objection.

Eleventh, Bullock objects to the Magistrate Judge's "conclusion that no evidence supports a finding of pretext . . . as it disregards [Singleton's] history of retaliatory behavior."  Objections at 13.

In support of this objection, Bullock argues that "[t]wo employees have filed EEO complaints naming . . . Singleton[:] Ester Bullock and Gloria Danner."  *Id.* at 13 (citations omitted).  And, Singleton "has only ever recommended two employees for termination in his career.  Both recommendations for termination came in the immediate aftermath of an employee's engagement in protected activities."  *Id*. (citations omitted).

The primary problem with this objection is that, because Bullock has failed to establish a prima facie case of Title VII retaliation, there is no reason to consider her pretext argument.  *See McDonnell Douglas Corp.*, 411 U.S. at 802, 804 (holding that, only if the employee successfully demonstrates a prima facie case does the burden shift, first to the employer to articulate some legitimate, non-retaliatory reason for the adverse employment action, and then back to the employee to show that the articulated reason was actually a pretext for discrimination.).

Nevertheless, as before, even if this evidence was admitted at trial, no jury of Bullock's peers could reasonably determine that, but for her protected activity, Bullock would not have been terminated from employment.  Again, prior to any of the protected activity, Singleton, on at least three occasions, had informed Bullock that her performance was unacceptable: As such, the Court will overrule this objection, too.

In Bullock's twelfth objection she objects to the Magistrate Judge's "conclusion that no evidence supports a finding of pretext is in error as it disregards the demonstrably false nature of Defendant's reprimand, PIP, and performance evaluation." Objections at 13.

According to Bullock, "a plaintiff may show that an employer's decisions were pretextual by revealing 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence.'" *Id.* at 13-14 (quoting *Cooper v. Southern Co.*, 390 F.3d 695, 725 (11th Cir. 2004) (overruled on other grounds). Bullock is correct.

The problem with this objection, however, is the same as what the Court noted in its discussion of Bullock's eleventh objection: because she has failed to establish a prima facie case of Title VII retaliation, there is no reason to consider this pretext argument. Thus, the Court will overrule this objection, too.

Thirteenth, Bullock objects to the Magistrate Judge's "conclusion that no evidence supports a finding of pretext[.]" Objections at 14. According to Bullock, that determination "is in error as it disregards the overwhelming supporting evidence from [Bullock's] coworkers of Defendant's retaliatory behavior in the workplace." *Id.*

The Court will overrule this objection for the same reason it will overrule Bullock's eleventh and twelfth objections: inasmuch as Bullock has failed to establish a prima facie case of Title VII retaliation, there is no reason to reach this pretext claim.

**IV.    CONCLUSION**

After a thorough review of the Report and the record in this case pursuant to the standard set forth above, the Court overrules Barrett's objections, adopts the Report to the extent it does not contradict this Order, and incorporates it herein. Accordingly, it is the judgment of this Court Defendant's motion for summary judgment is **GRANTED**. Thus, Bullock's retaliation claim is **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED**.

Signed this day 7th day of September, 2021, in Columbia, South Carolina.

/s/ Mary Geiger Lewis
MARY GEIGER LEWIS
UNITED STATES DISTRICT JUDGE